**ANTHONY SCORDO, ESQ., P.C.**
Atty ID 024591987
69. E. ALLNDALE RD
SADDLE RIVER, NJ 07458
1425 POMPTON AVENUE, PO Box 74
CEDAR GROVE, NJ 07009
(973) 837-1861
Attorney for Debtor

|  |  |  |
|---|---|---|
| In Re: | : | IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
|  | : |  |
|  | : |  |
|  | : |  |
| **CHERUBIN VINCENT** | : | Chapter 13 |
|  | : |  |
|  | : | Case No.: 23-10733 |
|  | : |  |

**DEBTOR'S MOTION FOR AN ORDER CONFIRMING AUTOMATIC STAY (1) DOES NOT PROHIBIT HIM FROM FILING A RELATED ADVERSARY COMPLAINT AGAINST UNSECURED CREDITOR FRESHSTART AND RELATED COMPANIES AND OFFICERS FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349 AND NJ CONSUMER FRAUD ACT**

To:   The Honorable John K. Sherwood
      United States Bankruptcy Judge

Debtor, Cherubin Vincent, by and through his attorney, Anthony Scordo, hereby moves to modify the automatic stay for the limited purpose of allowing the Debtor to file an adversary complaint against unsecured creditor Freshstart follows:.

1. On January 30, 2023, Debtor filed with the Clerk of the Court, a petition for relief from creditors pursuant to Chapter 7 of the Bankruptcy Code. Said petition was converted from Chapter 7 to seek relief under Chapter 13 by Order of July 24,2023.

2. Debtor has thereafter continued in possession for his property and has made timely payments pursuant to the proposed Chapter 13 Plan.  A confirmation hearing is scheduled for March 14, 2024 at 8:30 AM.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this Motion under 28 U.S.C §§157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

4.      The statutory basis for the relief sought in this Motion are 11 U.S.C. §§105, 362 and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

5.      On July 17, 2019, Plaintiff Freshstart Venture Capital Corp. ("Plaintiff" or "Freshstart"), a New York Corporation, by its attorneys, Foss San Filippo & Milne, filed a Verified Complaint in the Superior Court of New Jersey Law Division, Essex County, Docket. No. L-5227-19, naming as defendants Owned by Mr. Vincent ("OBV"), and Briana Taxi ("Briana") two NJ Limited Liability Companies, and Cherubin Vincent, an individual, alleging that the company had issued a four year Promissory Note attached to the Complaint in the amount of $300,000.00 to OBV, originally executed January 7, 2013 and modified by Loan Modification Agreement March 10, 2017 thereby extending same to January 10, 2019, had matured entitling Freshstart to assert possession over the secured collateral, Newark Taxi Medallion #427. The First Count alleges that Cherubin Vincent, the individual, pledged 100% of his ownership interest in OBV as collateral (para 4). The Note states that it is to be governed and interpreted by New York Law.

6.      During the term of the aforesaid Note, defendant was required to make monthly payments of $1856.35, after modification $1837.10. Plaintiff also sought permission to sell the medallion at public or private auction and ordering the Newark Division of Taxicabs to permit transfer of the Medallion.

7.      In the Second Count, plaintiff named as Defendant Briana Taxicab LLC ("Briana"), alleging Briana entered into a promissory note with Plaintiff on January 21, 2014 in the amount of $360,000 which had matured on January 23, 2018, requiring monthly payments of $2119.60. Said Note was apparently not attached to the Complaint. On May 1, 2018 the Note was modified and extended to January 23, 2020 with monthly payments increased to $2237.95. In addition, plaintiff alleged an individual Cherubin Vincent had personally guaranteed the payments under the aforesaid Note issued to Briana and pledged his 100% ownership interest as collateral.

8.      The Complaint also alleged that Briana entered into a "Cross-Collateralization Agreement and Amendment to Security Agreement" somehow "making the collateral referenced by the account security for the repayments of Vincent's debts. The Complaint alleged Braina failed to make the payment on October 23, 2018 and Plaintiff had "exercised the option" to "accelerate the indebtedness and has no(sic) demanded the full unpaid balance" including principal interest and fees. Plaintiff again sought permission to seize and transfer that Medallion.

9.      In the Third Count, Plaintiff alleged it lent individual Defendant Cherubin Vincent, on the same date as the Note issued in the Second Count, an additional $650,000. This Note was secured by two more Newark taxicab medallions requiring monthly payments of $3924.05 and was modified on May 1, 2018 increasing the monthly payment to $4077.23 and extending the maturity date to January 23, 2020. Defendant is alleged to have defaulted on October 23, 2018 by not making the payment. Counts 4, 5, and 6 sought from Defendant principal amount attorney's fees, interest, late charges and costs of suit.

10.     On May 8, 2020, the Superior Court entered default judgment against the individual defendant Cherubin Vincent in the amount of $698, 159. 18 plus attorneys' fees and costs

totaling $12,832. 87. Default judgments were also entered against the LLC defendants in varying amounts.

11. According to U.S. Securities Exchange Commission filings and publicly used financial information websites, plaintiff is a wholly owned subsidiary of Medallion Financial Corporation ("Medallion Financial"), a Delaware company headquartered in New York City. On December 29, 2021 Medallion Financial and its President Andrew Murstein and Chief Operations Officer were charged in the United States District Court, Southern District of New York, Docket Number 21-civ-11125 with engaging in "fraudulent schemes" to deceive investors and thereby boost the company's stock price in violation of the antifraud, books and records, internal controls and anti-touting provisions of the federal securities laws (Section 17(a) of the Securities Act of 1933) and Section 10(b) and Rule 10b-5 of the Securities Exchange Acto of 1934). According to the SEC press release issued the day of the filing of the first Complaint, the core business of Medallion Financial was making loans backed by taxicab medallions to taxicab owners and operators; however, the popularity of Uber and Lyft led to a decline in the value of the medallions and of Medallion Financial' s stock price. The government is charging <u>Medallion with failing to properly value its collateral backed loans by failing to take into account the adequacy of the collateral and market conditions and for inaccurately reporting its loan to value ratios for its medallion backed loans in its Form 10-K for 2017. The Complaint seeks civil monetary penalties, disgorgement of related profits and interest accrued and to permanently bar Murstein from acting as an officer or director of a publicly tradec company.</u>  According to the District Court's ECF, the SEC Complaint remains active and pending as of this date.

## RELIEF REQUESTED

12. Pursuant to Section 362(c) of the Bankruptcy Code, the Debtor requests an Order

confirming the automatic stay does not prohibit him from filing a related Adversary Complaint naming as defendants unsecured creditor Freshstart, its parent company Medallion Financial and its Chief Operating Officer Andrew Murstein for violation of New York General Business Law section 349 and the New Jersey Consumer Fraud Act.

**ARGUMENT**

13.    Bankruptcy Code Section 362(d) sets forth the general standard for obtaining relief from the automatic stay.  The provision provides, "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay … for cause …" 11 U.S.C. §362(d)(1).  In determining whether cause exists to lift the stay, courts consider the factors set out in In re Sonnax Indus. Inc. v. Tri Components Prods. 907 F. 2d 1280 (2d Cir. 1990). The Bankruptcy Code does not define "cause" and courts must determine when relief from the automatic stay is appropriate on a case-by-case basis. In Re Mid-Atlantic Handling System, LLC, 304 B.R. 111 (D.N.J. Bankr. 2003):

> i.    Whether relief would result in a partial or complete resolution of the issues;
>
> ii.    the lack of any connection with interference with the bankruptcy case;
>
> iii.    whether the other proceeding involves the debtor as a fiduciary;
>
> iv.    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
>
> v.    whether the debtor's insurer has assumed full responsibility for defending the action;
>
> vi.    whether the action primarily involves third parties;

    vii.    whether litigation in another forum would prejudice the interests of other creditors;

    viii.    whether the judgment claim arises from the other action isw subject to equitable subordination;

    ix.    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    x.    the interests of judicial economy and the expeditious and economical resolution of litigation;

    xi.    whether the parties are ready for trial in the other proceeding; and

    xii.    the impact of the stay on the parties and the balance of harms.

Ibid. Not all of the Sonnax factors are relevant in every case, and "cause" is a flexible concept that must be determined on a case-by-case basis examining the totality of the circumstances. Baldino v. Wilson (In Re Wilson), 116 F.2d 87, 90 (3d. Cir. 1997).

    New York General Business Law section 349(a) proscribes deceptive acts or practices in the conduct of any business, fraud, or commerce. Any person who has been injured by violation of General Business Law §349(a) is entitled to bring an action in his own name. Sec. 349(h) and must allege that (1) the challenged conduct was consumer fraud; (2) the conduct was materially misleading and (3) he was damaged. Emigrant Mortgage Co. v. Fitzpatrick, 906 NYS 2d 874 (Sup. Ct. 2010); In addition, debtor will seek to assert General Business Law's ban on conduct which is deceptive and is deemed materially misleading. Ibid. Stating a cause of action to recover damages for a violation of General Business law Section 349 is fairly straightforward where the consumer-oriented misconduct is deceptive and misleading to a reasonable consumer and has a broad impact to consumers at large. Aslam v. Fenway Development Corp.,Index No.

3657/ 11 (unpub. NY Sup. Ct. 2012).

The NJ Consumer Fraud Act, NJSA 56: 8-1 et. seq. (CFA) proscribes the use or employment of any unconscionable commercial practice whether or not the victim has been misled or deceived. Skeer v. EMK Motors, 187 NJ Super. To state a claim under the CFA, a plaintiff must show unlawful conduct and an ascertainable loss and a relationship between the two. Bosland v. Warnock Dodge, 197 NJ 543 (2009). It is the character of the transaction rather than the identity of the purchaser which determines if the CFA is applicable. Frederick Cleveland Cleveland Dev. v. O'Brien, civ. No. 10-3169 (DNJ 2010); Electric Mobility Corp. v. Bourns Sensors Controls, 87 f. Supp. 2d 394 (DNJ 2000). The Act applies to purchasers and owners of small franchise and distributorship agreements operating businesses just as ordinary consumer transactions. Kavky v. Herbalife, 359 NJ Super. 497 (App. Div. 2003).

Ther remedies available for violation of the NJ CFA include equitable remedies such as rescission of contract, as well as actual monetary damages trebled, attorneys' fees and costs of suit. In re O'Brien, 423 BR 477 (DNJ 2010) affirmed by Frederick Cleveland Cleveland, supra. Debtor in the adversary complaint will seek recission of the Promissory Notes, compensatory damages and attorney's fees. Ibid.

In this matter the Sonnax factors clearly exist warranting a stay of then Chapter 13 proceeding pending resolution of an adversary proceeding to be filed by plaintiff seeking rescission of the promissory notes for which unsecured creditor Freshstart seeks payment in amounts exceeding $700,000. The matter should also be stayed while the SEC prosecutes Freshstart's parent's corporation Medallion Financial for securities fraud. They are far and away

the largest unsecured creditor and predictable object to confirmation of plan which will permit debtor to save his home, his only substantial asset. Clearly they are trying to scrounge some of the money they lost for their investors and seek to cash in on their illegal fraudulent promissory notes issued to debtor a hard-working taxi cab driver. Murstein apparently has little in the way of a guilty conscience as you would think he would be smart enough to drop this claim. He will soon have to account for his greed and recklessness, Freshstart's unsavory, unconscionable and illegal business practices here plainly visible for all the world to see. Freshstart knew at all times, most particularly in 2018 when the Notes were extended and modified, that the consideration Freshstart was receiving exponentially exceeded the value of them medallions. Medallion Financial and Freshstart concealed the value of the medallions from borrowers like debtor just like they did from their investors as stated by the SEC.

## CONCLUSION

Based on the aforesaid facts and law, this court should, despite the automatic stay being in effect, permit debtor to file an Adversary Complaint against Freshstart, its parent Medallion Financial and its Chief Operating Officer Andrew Murstein.

Respectfully submitted,

s/ Anthony Scordo

Anthony Scordo, Esq.

Attorney for debtor Cherubin Vincent